WO                                                                                          JL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Derek Krause, | No. CV 19-08054-PCT-MTL (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Yavapai County, et al., | |
| Defendants. | |

Plaintiff Jason Derek Krause, through counsel, brought this civil rights case pursuant to 42 U.S.C. § 1983. Defendant Ernest Peele has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 62). Defendants Yavapai County, Yavapai County Sheriff Scott Mascher, Officer Belmore, Mike Dannison, Gordon Diffendaffer, Dick Erfert, Edward Hueske, Gene McFarland, Dennis Price, Terry Weaver, Roger Williamson, and Mike Winney[1] (the "Yavapai County Defendants") have filed a Joint Motion to Dismiss pursuant to Rule 12(b)(6). (Doc. 75). In addition to his own Motion to Dismiss, on February 12, 2020, Defendant Peele joined the Yavapai County Defendants' Motion to Dismiss. (Doc. 76). Plaintiff opposes the Motions. (Docs. 69, 80.)

The Court will deny the Yavapai County Defendants' Motion to Dismiss and will grant Defendant Peele's Motion to Dismiss.

. . . .

---

[1] On October 15, 2019, Defendants filed a Statement Noting Death (Doc. 72), indicating that Defendant Winney had passed away on August 17, 2019.

## I. Complaint

In his Amended Complaint[2] (Doc. 56), Plaintiff alleges, among other things, that Defendants violated his rights to due process and a fair trial under the Fifth and Fourteenth Amendments by fabricating evidence, failing to disclose material exculpatory evidence, destroying or failing to preserve exculpatory and potentially exculpatory evidence, and conducting a reckless investigation.

Plaintiff alleges that Defendant Yavapai County retained Defendant Peele to provide forensic examination, analysis, and testimony with respect to CBLA evidence. (Doc. 56 at 3.) Peele analyzed the bullet that killed the victim and compared it to a bullet found on Plaintiff's property. (*Id.* at 20.) Peele prepared a report "purporting to provide reliable evidence that the bullet that killed [the victim] came from a package of ammunition that [Plaintiff] voluntarily turned over" to Sheriff's Deputies. (*Id.* at 20-21.) Plaintiff claims that at the time Peele wrote the report, he knew and had proven in his own studies that CBLA is "entirely unreliable and invalid." (*Id.* at 20.) Thus, Plaintiff alleges, Peele "concealed relevant evidence and fabricated his test results" in Plaintiff's case, which "directly led to [Plaintiff's] conviction. (*Id.* at 22.)

In September 2005, the FBI issued a report disavowing CBLA analysis. (*Id.* at 29.) On October 9, 2008, FBI laboratory director Dr. Christian Hassell wrote to the Yavapai County Attorney's Office, informing them that Defendant Peele's expert testimony "exceeds the limits of science and cannot be supported by the FBI." (*Id.*) On October 16, 2008, Yavapai County Attorney's Office Trial Group Supervisor John Erickson sent a letter to Plaintiff, attaching the letter from Dr. Hassell and stating, "the State believes you are entitled to disclosure of this information." (*Id.*)

. . . .

. . . .

---

[2] Plaintiff also named Detective Dan Martin and Medical Examiner Philip Keen as Defendants in the Amended Complaint. (Doc. 56.) Plaintiff never served Martin. On February 24, 2020, the Court granted the parties' Stipulation for Dismissal of Defendant Keen without prejudice. (Doc. 77.)

**II.     Federal Rule of Civil Procedure 12(b)(6)**

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where the plaintiff is a pro se prisoner, the court must "construe the pleadings liberally and [] afford the petitioner the benefit of any doubt." *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010).

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary

judgment. *Id.*

## III. Discussion

### A. Background

On May 15, 1996, Plaintiff was convicted of one count of manslaughter in Yavapai County Superior Court. *See State v. Krause*, No. 2 CA-CR 2015-0326-PR, 2015 WL 7301820 (Ariz. Ct. App. Nov. 19, 2015). The State retained Defendant Peele—an agent with the Federal Bureau of Investigation—to provide forensic examination, analysis, and testimony with respect to Comparative Lead Bullet Analysis (CBLA) evidence. (Doc. 56 at 3.) Peele prepared a report and testified at trial that the bullet that killed the victim came from a package of ammunition Plaintiff had turned over to authorities.

Plaintiff's conviction was affirmed on direct appeal. *Id.* at *1. Plaintiff sought post-conviction relief, which was denied. In 2012, Plaintiff filed a petition for post-conviction relief raising claims of newly discovered evidence with respect to the scientific validity of CBLA evidence, among other claims. *Id.* at *2. The trial court denied relief after an evidentiary hearing. *Id.* On November 19, 2015, the Arizona Court of Appeals determined that the trial court had erred in denying Plaintiff's petition for post-conviction relief based on his claim of newly discovered evidence regarding CBLA evidence. *Id.* The Arizona Court of Appeals remanded the case to the trial court for further proceedings. *Id.* at *6. On July 5, 2016, the Court of Appeals issued its Mandate. (Doc. 80-2 at 2.)

Plaintiff subsequently "requested enforcement of the Mandate from the Court of Appeals," and on February 22, 2017, the Yavapai County Superior Court overturned and set aside Plaintiff's conviction and dismissed the indictment against him with prejudice. (*Id.*) Plaintiff filed the original Complaint in this case on February 20, 2019. (Doc. 1.)

### B. Defendants' Joint Motion to Dismiss

Defendants move to dismiss the Amended Complaint because Plaintiff failed to file the original Complaint within the two-year statute of limitations. (Doc. 75.)

#### 1. Legal Standards

"The purpose of a statute of limitation is 'to prevent assertion of stale claims against

a defendant.'" *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) (quoting *Davidton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1136 (9th Cir. 2001)). The applicable statute of limitations in an action under 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). The Arizona statute of limitations for personal injury actions is two years. *See* Ariz. Rev. Stat. § 12-542(1).

Accrual of § 1983 claims is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a claim accrues when the plaintiff "knows or has reason to know of the injury that is the basis of the action." *Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998).

### 2. Parties' Contentions

Defendants argue that as of October 3, 2016—90 days after the Court of Appeals issued its Mandate—the State was precluded from seeking a retrial under Arizona's Speedy Trial rules, set forth in Rule 8 of the Arizona Rules of Criminal Procedure.[3] (Doc. 82 at 2.) Defendants contend that when Plaintiff's conviction was reversed, the State had declined to retry him, and when the State's procedural deadline "came and went without a retrial," Plaintiff was free to file his civil suit. (*Id.* at 3.) Thus, Defendants assert, Plaintiff's claims accrued on October 3, 2016. (*Id.*)

In his Response, Plaintiff contends that his conviction was not vacated, and the charges were not dismissed until March 1, 2017. (Doc. 80 at 4.) According to Plaintiff, before the criminal charges were finally resolved on March 1, 2017, he was subject to re-prosecution on much of the same evidence supporting his original conviction. (*Id.*) Plaintiff therefore asserts that his claims did not accrue until March 1, 2017, and his original Complaint, filed on February 20, 2019, was timely. (*Id.*)

---

[3] Rule 8.2(c) provides, in relevant part, "A trial ordered upon an appellate court's reversal of a judgment must begin no later than 90 days after the appellate court issues its mandate." Ariz. R. Crim. P. 8.2(c).

Plaintiff argues that although Arizona law requires refiling criminal charges within 90 days following the reversal of a conviction on appeal, the speedy trial statute "does not conclusively prevent refiling after the deadline." (Doc. 80 at 4.) Plaintiff contends that the State may commence a re-prosecution after the 90-day deadline, and any subsequent conviction would be set aside only where Plaintiff could establish prejudice as a result of the delay in refiling. (*Id.* at 4-5.) Thus, Plaintiff asserts, "expiration of the 90-day period does not translate to full and final resolution of criminal charges, nor is it tantamount to dismissal with prejudice." (*Id.* at 5.) Plaintiff claims that until the case was dismissed, "it was alive, and charges could have been pursued, and any action by [Plaintiff] to proceed in [federal] court would have implied the invalidity of his conviction."

**3.     Analysis**

To be timely, Plaintiff's claims must have accrued on or after February 20, 2017, two years before his Complaint was filed. Claims that accrued before February 20, 2017, are untimely. The parties dispute when Plaintiff's claims accrued. "'[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action.'" *Id.* at 387 (quoting *Wallace v. Kato*, 549 U.S. 384 (2007)). That is, "a claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of his cause of action." *Id.* (citing *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90. Thus, a claim for damages from a conviction or sentence "that has not been so invalidated is not cognizable under § 1983." *Id.* at 487. The Supreme Court held that a plaintiff could satisfy the favorable termination requirement by proving that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87.

Recently, in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), the Supreme Court held

that the statute of limitations for a fabricated-evidence claim, as is at issue here, does not begin to run until the criminal proceedings against the § 1983 plaintiff had terminated in his favor. *Id.* at 2155. The Court of Appeals in *McDonough* had held that the plaintiff's fabricated-evidence claim accrued when the plaintiff learned the evidence was false and was used against him during the criminal proceedings, and he suffered a loss of liberty as a result of that evidence. *Id.* at 2154. The Supreme Court reversed the Court of Appeals' decision. *Id.*

The Supreme Court first observed that the time at which a § 1983 claim accrues is "presumptively 'when the plaintiff has a complete and present cause of action,' though the answer is not always so simple." *Id.* at 2155 (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal citation omitted). The Court noted that "[a]n accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed" and that the Court often decides accrual questions by referring to the common-law principles governing analogous torts. *Id.* at 2155-56 (quoting *Manuel v. Joliet*, 580 U.S. ___, ___, 137 S. Ct. 911, 920 (2017)). The Court determined that the most analogous state-law claim to the plaintiff's fabricated-evidence claim was malicious prosecution, which "accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor." *Id.* at 2156.

The Supreme Court concluded that the plaintiff could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution. *Id.* Thus, the Court held, "[t]here is not 'a complete and present cause of action' to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing." *Id.* at 2158 (quoting *Wallace*, 549 U.S. at 388). Instead, "[o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, will the statute of limitations begin to run." *Id.* (internal citation omitted).

Most recently, in *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1203 (9th Cir. 2020), the Ninth Circuit held that the plaintiffs' convictions were "declared invalid by a state tribunal authorized to make such determination" when the Alaska Superior Court vacated

their convictions based on a settlement agreement. The court concluded that the plaintiffs' claim accrued when the trial court vacated their convictions pursuant to the settlement agreement; at that point, there was no outstanding criminal judgment, there were no charges pending against the plaintiffs, and they did not "stand convicted of anything." *Id.* at 1204.

It appears the Ninth Circuit has never squarely addressed the particular circumstances presented in this case, where after his conviction was reversed, Plaintiff could have been retried for the same charges but was not. Defendants' characterization of the issue in this case as "what knowledge the Plaintiff derived, or should have derived, from the undisputed fact that retrial was not sought by the Rule 8.2(c) deadline" is misplaced. The accrual date of Plaintiff's § 1983 claim does not depend solely on when Plaintiff knew he was injured. As the Supreme Court noted in *McDonough*, the date on which a constitutional injury first occurs is not the only date from which a limitations period may run. 139 S. Ct. at 2160. "To the contrary, the injury caused by a classic malicious prosecution [] first occurs as soon as legal process is brought to bear on a defendant, yet *favorable termination* remains the accrual date." *Id.*

Defendants also argue that the prosecution terminated favorably to Plaintiff, at the latest, when, under Arizona's speedy trial rules, the time for the State to retry Plaintiff elapsed, and the State did not retry him. Plaintiff contends that despite the 90-day limitation, the State could have retried him, although the resulting conviction could have been subject to reversal if the delay prejudiced him; therefore, his claim did not accrue until then.[4] The Court agrees. As noted above, under Rule 8.2(c) of the Arizona Rules of Criminal Procedure, "A trial ordered upon an appellate court's reversal of a judgment must begin no later than 90 days after the appellate court issues its mandate." Ariz. R. Crim. P. 8.2(c). However, the State's decision *not* to retry Plaintiff, in itself, did not render the extant conviction invalid or equate to dismissal of the charges. It was not until the trial

---

[4] Defendants assert that the Yavapai County Attorney's Office informed Plaintiff that it did not intend to retry him. As Plaintiff points out, that fact, whether true or not, is irrelevant to Defendants' Motion to Dismiss because it does not change that retrial still remained possible until vacatur of the conviction.

court vacated the conviction and dismissed the indictment that the State could no longer prosecute Plaintiff for the same charges.

Defendants attempt to equate the State's decision to allow the 90 days under the speedy trial rules to elapse to dropping charges. However, unlike allowing a procedural time limit to elapse, dropping charges or a *nolle prosequi* is an affirmative choice to terminate the criminal proceeding. *See Randall v. City of Philadelphia Law Dep't*, 919 F.3d 196 (3d Cir. 2019) (holding that the criminal proceeding terminated in the plaintiff's favor when the state dropped the charges against him); *Spak v. Phillips*, 857 F.3d 458, 464 (2d Cir. 2017) (holding that *nolle prosequi* is a favorable determination for accrual purposes). In this case, Defendants did not *choose* to drop the charges. Instead, they allowed the time to retry Plaintiff to elapse, and Plaintiff sought enforcement of the Arizona Court of Appeals' Mandate. It was in response to Plaintiff's request that the trial court vacated his conviction and dismissed the indictment.

Finally, Defendants erroneously suggest that because Plaintiff knew that any retrial would necessarily exclude the CBLA evidence, this was "sufficient to place Plaintiff on notice that his criminal case had ended favorably" for purposes of accrual by October 2016. (Doc. 82 at 8.) The question is not whether the State could have *successfully* retried Plaintiff following the Arizona Court of Appeals' decision. Rather, so long as the State had the option of prosecuting Plaintiff for the same charges, if Plaintiff had filed his § 1983 action during that time, there was still the possibility of "parallel criminal and civil litigation over the same subject matter" or "the related possibility of conflicting civil and criminal judgments." *Id.* at 2157; *see also Spak*, 857 F.3d at 464 (noting that when the State could *no longer prosecute* the plaintiff for the same charges, "all of the issues relevant to the [§ 1983] claim—such as malice and lack of probable cause—are ripe for adjudication").

For the foregoing reasons, the Court concludes that Plaintiff's § 1983 claims did not accrue until February 22, 2017. His original Complaint, filed on February 19, 2019, was

therefore timely. Accordingly, the Court will deny the Yavapai County Defendants' Motion to Dismiss.

### C. Defendant Peele's Motion to Dismiss

Defendant Peele argues that Plaintiff's claims against him must be dismissed because they are barred by the statute of limitations; because Peele was not a state actor; and because Peele is entitled to absolute immunity or qualified immunity.

#### 1. Statute of Limitations

Defendant Peele argues that Plaintiff first learned the FBI had announced that it would no longer use CBLA on October 16, 2008, when he received the letter from the Yavapai County Attorney's Office. (Doc. 62 at 3.) Peele further contends that at a minimum, Plaintiff was "aware of this cause of action" by February 14, 2014, because he asserted CBLA claims in his petition for post-conviction relief in state court, which were "identical" to those he asserts in this case. (*Id.*)

In his Response, Plaintiff argues that none of his claims accrued until March 1, 2017, when all the charges were dismissed. (Doc. 69 at 8.) According to Plaintiff, under the delayed-accrual rule established in *Heck*, his claims did not accrue until he had a complete cause of action, which was the date on which the charges were dismissed. (*Id.*)

For the reasons discussed above, Defendant Peele's statute of limitations argument fails. If Plaintiff had filed a § 1983 or *Bivens* claim against Peele in 2008, 2014, or any time before his conviction was vacated, the claim would have been barred by *Heck*, because Plaintiff's claim that Peele fabricated evidence that directly led to Plaintiff's conviction necessarily implied the invalidity of his conviction. Thus, Plaintiff could not assert a § 1983 or *Bivens* claim against Peele until his conviction was overturned, which occurred on February 22, 2017. The Court therefore concludes Plaintiff's claim against Defendant Peele is not barred by the statute of limitations.

#### 2. State Action

Defendant Peele next argues that Plaintiff's claim against him must be dismissed because Peele was not a state actor. To prevail in a § 1983 claim, a plaintiff must show

that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). "[S]tate action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Defendant Peele was a private expert witness retained by the government in Plaintiff's criminal proceeding. Although Plaintiff alleges that Peele was acting under color of state law, that is a legal conclusion, not a factual allegation that the Court must accept as true. The Supreme Court has held that an allegation that a private person conspired with a state official satisfies the requirement that a defendant act under color of state authority. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989) ("Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights.").

A defendant acted under the color of state law if he "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins,* 487 U.S. 42, 49 (1988) (citation omitted). Private parties "generally" cannot be said to act under color of state law for purposes of § 1983. *See Price v. Hawaii,* 939 F.2d 702, 707-08 (9th Cir. 1991). In certain situations, however, "private" action may be found to have been committed under color of state law, specifically, "when there is 'significant' state involvement in the action." *Howerton v. Gabica,*708 F.2d 380, 382 (9th Cir. 1983).

Here, Plaintiff alleges only that each Defendant "was the agent and/or employee and/or co-conspirator of each and every other" Defendant. (Doc. 56 at 7.) Plaintiff further

alleges that Defendants each "conspired and agreed to commit the above-described unconstitutional deprivations of [Plaintiff's] rights and acted in concert to deprive" Plaintiff of his constitutional rights. (*Id.* at 34.) The Court need not accept Plaintiff's vague and conclusory allegations that Defendants collectively conspired with one another to violate his rights. *See Simmons v. Sacramento County Superior Court,* 318 F.3d 1156, 1161 (9th Cir. 2003) (holding that conclusory allegations that lawyer in private practice conspired with court clerks and other state officers were insufficient to render the lawyer a state actor). Plaintiff's allegations in the Amended Complaint do not support a conclusion that Defendant Peele was a state actor for § 1983 purposes.

In any event, as discussed below, the Court finds Defendant Peele is entitled to absolute immunity for the preparation of his report and for his trial testimony.

### 3. Absolute Immunity

Defendant Peele also contends that his conduct with respect to Plaintiff's criminal case is shielded by absolute immunity. (Doc. 62 at 1.) Peele asserts he was not an investigating agent and was not part of the investigation team; rather, Peele served only as an expert witness in CBLA at trial. (*Id.* at 2.) Plaintiff responds that he does not assert liability on the basis of Peele's trial testimony, but rather, on the basis of Peele's 1994 report concluding that the bullet that killed the victim came from a package of ammunition that Plaintiff had turned over to sheriff's deputies, which Plaintiff contends "set in motion a chain of events that ultimately violated Plaintiff's right to be free from conviction on the basis of false or deliberately fabricated evidence." (Doc. 69 at 2.)

Plaintiff acknowledges that Peele is absolutely immune from liability for his trial testimony. But as the Seventh Circuit recognized in *Buckley*, expert witnesses are also absolutely immune for their pretrial activities, including evaluating evidence, writing reports, discussing the case with prosecutors, and preparing to testify. *Buckley v. Fitzsimmons*, 919 F.2d 1230 (7th Cir. 1990), *reversed on other grounds*, 509 U.S. 259 (1993). Thus, although Plaintiff purports to base Peele's liability solely on his report, Peele is absolutely immune for evaluating the evidence and writing the report.

The Court need not address Plaintiff's other arguments concerning Defendant Peele's liability. The Court will grant Defendant Peele's Motion to Dismiss.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant Peele's Motion to Dismiss (Doc. 62) and Defendants' Joint Motion to Dismiss (Doc. 75).

(2) Defendants' Joint Motion to Dismiss (Doc. 75) is **denied**.

(3) Defendant Peele's Motion to Dismiss (Doc. 62) is **granted**.

(4) Defendant Peele is **dismissed**.

(5) Count IV is **dismissed.**

(6) The remaining Defendants are Yavapai County, Mascher, Belmore, Dannison, Diffendaffer, Erfert, Hueske, McFarland, Price, Weaver, Williamson, and Winney. The remaining claims are the § 1983 claim in Count I against all individual Defendants except Peele; the claim in Count II against Defendant Mascher based on supervisory liability; and the *Monell* claim in Count III against Yavapai County.

Dated this 3rd day of April, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge