WO

JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Derek Krause,<br><br>  Plaintiff,<br><br>v.<br><br>Yavapai County, et al.,<br><br>  Defendants. | No.  CV 19-08054-PCT-MTL (ESW)<br><br>**ORDER** |

Plaintiff Jason Derek Krause, through counsel, brought this civil rights case pursuant to 42 U.S.C. § 1983. On September 4, 2019, Defendant Ernest Peele filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 11, 2020, Defendants Yavapai County, Yavapai County Sheriff Scott Mascher, Officer Belmore, Mike Dannison, Gordon Diffendaffer, Gene McFarland, Dennis Price, Roger Williamson, and Mike Winney (the "Yavapai County Defendants") and Defendants Dick Erfert, Edward Hueske, and Terry Weaver (the "State Defendants") filed a Joint Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 12(c), asserting that Plaintiff's claims are time-barred. In addition to his own Motion to Dismiss, on February 12, 2020, Defendant Peele joined the Yavapai County Defendants and State Defendants' Joint Motion to Dismiss.

In an April 3, 2020 Order, the Court granted Defendant Peele's Motion to Dismiss and denied the Yavapai County Defendants and State Defendants' Joint Motion to Dismiss. On April 13, 2020, the Yavapai County Defendants and State Defendants filed a Joint Motion to Amend/Correct the April 3, 2020 Order. (Doc. 84.) On April 17, 2020, Plaintiff

filed a Motion for Reconsideration of the Court's decision to grant Defendant Peele's Motion to Dismiss. (Doc. 86.) On April 27, 2020, Plaintiff filed a Response in Opposition (Doc. 87) to the Joint Motion to Amend/Correct, and on May 4, 2020, the Yavapai County Defendants and State Defendants filed a Reply to Plaintiff's Response to their Motion to Amend/Correct (Doc. 88).

The Court will grant in part and deny in part the Yavapai County Defendants and State Defendants' Joint Motion to Amend/Correct and will deny Plaintiff's Motion for Reconsideration.

**I.  Motion to Amend/Correct and Motion for Leave to File Interlocutory Appeal**

**A.  Motion to Amend/Correct**

In their Motion to Amend/Correct, the Yavapai County Defendants and the State Defendants ask the Court, in part, to correct references in the April 3, 2020 Order to not refer to Defendants collectively. Although it is not at all clear that there is any confusion surrounding the identity of the parties who sought dismissal, the Court will grant the Motion to Amend to the extent that the Court will amend the April 3, 2020 Order as follows:

>  **Page 13** is amended to read:
>
>  **IT IS ORDERED:**
>
>  (1)  The reference to the Magistrate Judge is **withdrawn** as to Defendant Peele's Motion to Dismiss (Doc. 62) and the Yavapai County Defendants and the State Defendants' Joint Motion to Dismiss (Doc. 75).
>
>  (2)  The Yavapai County Defendants and the State Defendants' Joint Motion to Dismiss (Doc. 75) is **denied**.
>
>  . . .
>
>  (6)  The remaining Defendants are Yavapai County, Mascher, Belmore, Dannison, Diffendaffer, McFarland, Price, Williamson, Winney, Erfert, Hueske, and Weaver. The remaining claims are the § 1983 claim in Count I against all individual Defendants except Peele; the

# claim in Count II against Defendant Mascher based on supervisory liability; and the *Monell* claim in Count III against Yavapai County.

In all other respects, the Yavapai County Defendants and the State Defendants' Motion to Amend will be denied.

## B. Motion for Leave to Take Interlocutory Appeal

The Yavapai County Defendants and the State Defendants also seek leave, pursuant to 28 U.S.C. § 1292(b), to take an interlocutory appeal from the Court's denial of their Joint Motion to Dismiss based on the statute of limitations. (Doc. 84 at 3.)

Section 1292(b) provides,

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Generally, appellate review is available only after a district court has entered a final judgment. 28 U.S.C. § 1291. The Supreme Court has explained that this general rule serves "important purposes," including "emphasiz[ing] the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial," "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals," and "promoting efficient judicial administration." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981) (internal quotation marks and citations omitted). Interlocutory appeals are "generally disfavored because they are disruptive, time-consuming, and expensive." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir.

2005) (citation omitted). Interlocutory appeals also "add to the heavy workload of the appellate courts" and "require consideration of issues that may become moot." *Id.* Thus, certification of interlocutory appeals should be granted only in "exceptional circumstances." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

There are three requirements for certification of an interlocutory appeal pursuant to § 1292(b): "(1) that there be a controlling question of law; (2) that there be substantial grounds for difference of opinion; *and* (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd* 459 U.S. 1190 (1983) (emphasis added). These requirements are expressed in the conjunctive; therefore, Defendants must carry their burden as to all three factors. *See Villareal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1067 (D. Ariz. 2015); *see also Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 676-77 (7th Cir. 2000) (noting that unless all the criteria are satisfied, "the district court may not and should not certify its order to [the court of appeals] for an immediate appeal under section 1292(b)"). Thus, as expressed by the Seventh Circuit, "there must be a question of *law*, it must be *controlling*, [and] it must be *contestable*." *Ahrenholz*, 219 F.3d at 676-77 (emphasis in original).

The Ninth Circuit has emphasized that § 1292(b) is "to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id.* The party seeking certification of an interlocutory appeal has the burden to show the presence of exceptional circumstances that warrant departure from the "basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand*, 437 U.S. at 475; *see also Villareal*, 85 F. Supp. 3d at 1067.

Because § 1292(b) "is a departure from the normal rule that only final judgments are appealable," it "must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002). "'It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or that mere question[s] as to the correctness of the ruling would prompt the granting of the

certificate.'" *Loritz v. CMT Blues*, 271 F. Supp. 2d 1252, 1254 (S.D. Cal. 2003) (quoting *See United States v. Woodbury*, 263 F.2d 784, 785 n.2 (9th Cir. 1959)). In other words, section 1292(b) was not intended "'merely to provide review of difficult rulings in hard cases.'" *Environmental Protection Information Center v. Pacific Lumber Co.*, 2004 WL 838160, at *2 (N.D. Cal. April 19, 2004) (quoting *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)).

"The decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court." *United States v. Tenet Healthcare Corp.*, 2004 WL 3030121, at *1 (C.D. Cal. Dec. 27, 2004) (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995)). Thus, "[e]ven when all three of § 1292(b)'s criteria are met, the district court retains unfettered discretion to deny a motion to certify for interlocutory review." *Juliana v. United States*, 2018 WL 4997032, at *32 (D. Or. Oct. 15, 2018).

### 1. Controlling Question of Law

In this case, the Yavapai County Defendants and the State Defendants disagree with the Court's determination that Plaintiff's claims accrued on February 22, 2017, rather than on October 3, 2016, as the Yavapai County Defendants and the State Defendants contend. This is not a "pure" or "abstract" question of law. The Ninth Circuit has stated that the "controlling question of law requirement [should] be interpreted in such a way to implement th[e] policy" of applying section 1292(b) "sparingly and only in exceptional cases." *In re Cement Antitrust Litig.*, 673 F.2d at 1027. In the Ninth Circuit, "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Id.* at 1026. "Examples of controlling questions of law include fundamental issues such as 'the determination of who are necessary and proper parties, whether a court to which a case has been transferred has jurisdiction, or whether state or federal law should be applied.'" *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 879 (C.D. Cal. 2012) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026-27).

The Yavapai County Defendants and the State Defendants assert that "the issue of the applicable statute of limitations and whether that statute of limitations was tolled prior to filing the underlying lawsuit are controlling questions of law" in this case. (Doc. 84 at 4.) But that is true any time a court decides a pretrial dispositive motion. If an interlocutory appeal is warranted any time an issue could materially affect the outcome of litigation, then "a party would be able to appeal every time summary judgment is denied even though interlocutory appeals should be heard only in exceptional cases." *McDonnell v. Riley*, No. 15-cv-01832-BLF, 2016 WL 613430, at *5 (N.D. Cal. Feb. 16, 2016) (citing *In re Cement Antitrust Litig.*, 673 F.2d at 1026); *see also Ahrenholz*, 219 F.3d at 676 (noting that "it might seem that the statutory criteria for an immediate appeal would be satisfied in every case in which summary judgment was denied on a nonobvious ground. But that cannot be right. Section 1292(b) was not intended to make denials of summary judgment routinely appealable"). The Court declines to interpret the first requirement so broadly.

Although the issue Yavapai County Defendants and the State Defendants wish to resolve before continuing this litigation is "the applicable statute of limitations and whether that statute of limitations was tolled prior to filing the underlying lawsuit," that is not a "controlling question of law" within the meaning of § 1292(b). Thus, the Yavapai County Defendants and the State Defendants have not met their burden as to the first requirement under § 1292(b).

### 2.      **Substantial Ground for Difference of Opinion**

The Yavapai County Defendants and the State Defendants contend that "there is conflicting authority" on the statute of limitations issue. (Doc. 84 at 4.) In support of this assertion, the Yavapai County Defendants and the State Defendants point to the *parties*' disagreement about when Plaintiff's claims accrued and the Court's findings and conclusion that Plaintiff's claims are not time-barred. (*Id.*) But the source of "conflicting authority" cannot simply be a disagreement between the parties regarding the outcome of the case. "Courts traditionally will find that a substantial ground for difference of opinion exists where the *circuits* are in dispute on the question and the court of appeals of the circuit

has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (internal quotations and citation omitted). The Yavapai County Defendants and the State Defendants rely solely on *their* disagreement with the Court's conclusions to support the assertion that there is "conflicting authority" on the statute of limitations issue. (*Id.* at 5.) They have identified no *other case* in which a court reached a decision that conflicts with this Court's decision. *See Lucas v. Hertz Corp.*, No. C 11-01581 LB, 2012 WL 5199384, at *4 (N.D. Cal. Oct. 22, 2012) (finding party had not shown a "substantial ground for difference of opinion" where party did not cite any orders from other courts that conflicted with the court's order). Accordingly, the Court finds the Yavapai County Defendants and the State Defendants have not met their burden with respect to the second factor.

### 3. Materially Advance Termination of Litigation

The Yavapai County Defendants and the State Defendants contend that if this case proceeds, "it will assuredly call heavily upon the resources, money, time, and commitment of all parties" and "will likely involve substantial litigation on various issues which are likely to require substantial discovery." (Doc. 84 at 6.) An immediate appeal decided in favor of the Yavapai County Defendants and the State Defendants would undoubtedly end this lawsuit. *See United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959) ("Section 1292(b) was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions which, if decided in favor of the appellant, would end the lawsuit" and citing question relating to a statute of limitations as such a question). However, merely advancing the ultimate termination of litigation is insufficient. An interlocutory appeal would materially advance the ultimate termination of litigation every time a court decides a pretrial dispositive motion. The Court declines to interpret the third requirement so broadly; the Yavapai County Defendants and the State Defendants must "do more than just note that granting [a motion to dismiss] would end litigation." *Id.*

The Court finds the Yavapai County Defendants and the State Defendants have not met this burden. The only considerations they offer—general saving of time and resources—apply in every case that is decided before a trial and are not extraordinary or exceptional circumstances that warrant certifying the case for an interlocutory appeal. Moreover, as this Court has observed, "although the parties and the court will waste resources if the court has erred, that concern is outweighed by the substantial prejudice plaintiffs will suffer if they are further delayed in bringing their case to fruition." *Hannah v. General Motors Corp.*, No. CV 93-1368-PHX-RCB, 1994 WL 924259, at *7 (D. Ariz. Oct. 7, 1994).

### 4. Other Considerations

Notwithstanding the factors set forth in *In re Cement Antitrust Litigation*, as noted above, the Court retains discretion to deny certification for an interlocutory appeal. *See In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1258 (N.D. Cal. 2008). The Court finds that the Yavapai County Defendants and the State Defendants have not met their burden of showing that "exceptional circumstances" justify the certification of an interlocutory appeal. The legal question at issue—whether the statute of limitations bars Plaintiff's § 1983 claims for malicious prosecution—is neither novel nor difficult. *See Reese*, 643 F.3d at 688 (noting that "[c]ourts traditionally will find that a substantial ground for difference of opinion exists where ... novel and difficult questions of first impression are presented") (quoting *Couch*, 611 F.3d at 633). The Yavapai County Defendants and the State Defendants have not identified any extraordinary circumstances that transform the issue into anything beyond a garden variety statute of limitations dispute. *See Hannah*, 1994 WL 924259, at *7 (declining to certify statute of limitations ruling for interlocutory appeal because exceptional circumstances were not present, and the issue implicated factual issues). The Court finds these additional considerations weigh against certifying the case for an interlocutory appeal.

For the foregoing reasons, the Court will deny the Yavapai County Defendants and the State Defendants' request that the Court certify the April 3, 2020 Order as appropriate

for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## II.     Motion for Reconsideration

In his Motion for Reconsideration, Plaintiff contends the Court erred in determining that Defendant Peele was absolutely immune for his conduct with respect to Peele's report involving CBLA analysis and that Plaintiff had not sufficiently alleged that Peele was a state actor. (Doc. 86.)

### A.     Reconsideration Standard

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Such motions should not be used for the purpose of asking a court "'to rethink what the court had already thought through – rightly or wrongly.'" *Defenders of Wildlife*, 909 F. Supp. at 1351 (*quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Nor may a motion for reconsideration repeat any argument previously made in support of or in opposition to a motion. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988).

### B.     Absolute Immunity

#### 1.     Plaintiff's Allegations in the FAC

In Count I of the Amended Complaint, Plaintiff sues Defendant Peele for section 1983 violations as an "agent" for Yavapai County. (Doc. 56 at 39 ¶ 222.) In Count IV,

Plaintiff asserts a *Bivens* claim against Peele in his capacity as an FBI agent. (*Id.*) Plaintiff alleges that Peele "was retained by Yavapai County to provide forensic examination, analysis and testimony with respect to Comparative Lead Bullet Analysis evidence." (*Id.* at 3 ¶ 8.) Plaintiff claims Peele "was acting under color of state and federal law and the course and scope of his agency and employment relationship with Yavapai County and the Federal Bureau of Investigation, and was working at the direction and control of Yavapai County and the YCSO with respect to the underlying criminal case" against Plaintiff. (*Id.*) Plaintiff's claim against Peele is that he conducted a "deliberately reckless forensic analysis that was indifferent to [Plaintiff's constitutional rights" and that Peele "participated in the investigation that resulted in [Plaintiff's] wrongful arrest, prosecution, conviction and imprisonment." (*Id.*)

Plaintiff alleges that Yavapai County retained Peele, "an expert in Comparative Bullet Lead Analysis," (hereinafter "CBLA") to "analyze the bullet that killed [the victim], and compare it to a bullet found on [Plaintiff's] property." (*Id.* at 20-21 ¶ 120.) Plaintiff claims that Peele "conduct[ed] CBLA" and "prepared a report purporting to provide reliable evidence that the bullet that killed [the victim] came from a package of ammunition that [Plaintiff] voluntarily turned over to" law enforcement authorities. (*Id.*) Plaintiff asserts that in his report and subsequent trial testimony, Peele "stated that he used CBLA to establish that the bullet that killed [the victim] came from the package of ammunition [Plaintiff] turned over to police." (*Id.* at 21 ¶ 121.) Plaintiff claims that through his report, Peele "provided Yavapai County the purported scientific support it needed to wrongfully convict [Plaintiff], which directly led to his wrongful conviction." (*Id.* ¶ 122.) Plaintiff alleges that at the time he wrote his report, Peele "personally knew—and had personally proven in his own studies—that CBLA is entirely unreliable and invalid." (*Id.* ¶ 123.)

Plaintiff asserts that Peele "reported and testified" that Peele "analyzed and compared the bullet fragments from the scene with [Plaintiff's] unfired cartridges," his tests determined the quantities of antimony, bismuth, copper, and silver. (*Id.* ¶¶ 125-26.) Plaintiff claims Peele testified at trial that the results indicated that the bullets "have been

in the same box." (*Id.* ¶ 127.) Plaintiff alleges Peele "asserted the lead fragment that went through [the victim's] head was consistent with the cartridges originating from [Plaintiff's] box of ammunition." (*Id.* at 22 ¶ 128.) Plaintiff claims that Peele noted in his report that the specimens were "analytically indistinguishable." (*Id.* ¶ 129.)

Plaintiff alleges that well before his work on behalf of Yavapai County in Plaintiff's criminal case, Peele "personally knew that his opinions lacked scientific basis" and "concealed relevant evidence and fabricated his test results in [Plaintiff's] murder case, with deliberate indifference to [Plaintiff's] constitutional rights and to the truth," and this "concealment and fabrication directly led to [Plaintiff's] conviction." (*Id.* at 22 ¶ 134.)

### 2. Plaintiff's Contentions

Plaintiff contends the Court erred in finding that Defendant Peele was entitled to absolute immunity for preparing his report. (Doc. 86 at 4.) Plaintiff asserts that Ninth Circuit law distinguishes acts that are "preparatory" to testimony from "non-testimonial acts." (*Id.*) He further argues that the Ninth Circuit in *Lisker v. City of Los Angeles*, 780 F.3d 1237 (9th Cir. 2015), clarified that "investigatory activity and forensic reports are 'non-testimonial' acts for which absolute immunity is not available." (*Id.*) Plaintiff contends that police and other investigative materials, including "forensic reports," have "evidentiary value unrelated to trial testimony – these materials not only affect initial charging decisions but also post-charging activities such as continuing with the prosecution and plea-bargaining decisions." (*Id.*)

### 3. Analysis

As an initial matter, the Court notes that in Count IV, Plaintiff makes various *legal* assertions concerning whether Peele acted under color of state law and whether his report "falls outside of the protection of absolute immunity." (*Id.* at 41 ¶ 225.) The Court need not accept these legal conclusions. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (in evaluating a motion to dismiss, a court is not required to accept as true "unwarranted deductions of fact" or "unreasonable inferences"); *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994) (a court is not required to accept

"legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged").

Plaintiff cites *Gregory* and *Keko v. Hingle*, 318 F.3d 639 (5th Cir. 2003), also cited by the Ninth Circuit in *Lisker*, for the proposition that Defendant Peele is not entitled to absolute immunity for allegedly fabricating his expert forensic report. (Doc. 86 at 4.) Plaintiff ascribes much significance to the Ninth Circuit's citations to *Gregory* and *Keko*, but those cases do not help him.

In *Gregory*, the plaintiff alleged that a forensic examiner who worked for the state police crime laboratory had fabricated evidence when she construed and documented the plaintiff's hair as a "match" to those found at the crime scene and knowingly withheld the existence of two non-matching hairs. 444 F.3d at 732. The state forensic examiner later testified at the plaintiff's criminal trial. *Id.* at 732, 735. The Sixth Circuit noted that "absolute testimonial immunity does not 'relate backwards' to 'protect [a defendant] for any activities he allegedly engaged in prior to taking the witness stand for his [] testimony.'" *Id.* at 738. Thus, "[s]ubsequent testimony can not insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence." *Id.* at 738-39. In addition, "'[e]xpert' forensic examiners act in an investigatory fashion when they interpret and document physical evidence." *Id.* at 740. The Sixth Circuit concluded that under the Supreme Court's "functional test" set forth in *Buckley*, "the pre-trial investigatory acts by forensic examiners merit no more protection under absolute immunity than do other persons performing investigatory actions." *Id.*

The key distinction between Defendant Peele's report in this case and the evidence at issue in *Lisker*, *Gregory*, and *Keko* is that Defendant Peele prepared his report *after* probable cause to arrest and charge Plaintiff had been established. Peele's report cannot plausibly be characterized as "police investigative material." *See Sprewell*, 266 F.3d at 988. Peele is not a police officer, and he did not "investigate" the homicide to determine who was the perpetrator and to collect enough evidence to charge a suspect. Nor can Peele's report be construed as similar enough to police investigative material that is

fabricated *before* an arrest or indictment, as in *Lisker* and *Gregory*, to warrant denial of absolute immunity for the statements in the report, which was prepared *after* Plaintiff's arrest and indictment. Thus, notwithstanding Plaintiff's attempt to frame the inquiry as how long before Plaintiff's *trial* Peele wrote his report, the report was procured to help *prove* the prosecution's case, not to support the *initiation* of a case. Plaintiff's allegations demonstrate that Peele's report, unlike the non-testimonial materials in the Murder Book in *Lisker*, was pretrial activity "aimed exclusively at influencing testimony." *Id.* at 1242. And even if Plaintiff is correct that *Gregory* and *Keko* would require a different conclusion, as he points out, extra-circuit decisions are not binding on this Court.[1]

In sum, the Court did not err in concluding that Defendant Peele is absolutely immune for the contents of his report, regardless of whether Peele testified at Plaintiff's trial. The Court will therefore deny Plaintiff's Motion for Reconsideration as to absolute immunity.

Although the Court need not address Plaintiff's other arguments in his Motion for Reconsideration, the Court will, nevertheless, briefly address Plaintiff's argument that the Court erred in concluding that he had not sufficiently alleged that Peele was a "state actor" for purposes of § 1983.

**C.    State Actor**

Plaintiff contends that the Court "overlooked" his factual allegations regarding whether Peele acted under color of state law and the inferences to be drawn from these allegations. (Doc. 86 at 11.) Specifically, Plaintiff cites the following allegations in the First Amended Complaint:

> Peele was an (a) FBI agent; (b) retained by the County, (c) was acting within the course and scope of his agency and employment relationship with Yavapai County and the Federal Bureau of Investigation; (d) was working at the

---

[1] Plaintiff takes issue with the Court's citation to *Buckley v. Fitzsimmons*, 919 F.2d 1230 (7th Cir. 1990), stating that "*Buckley* is not the law in the Ninth Circuit, and to the extent it states a different absolute immunity rule than *Lisker*, this Court must follow *Lisker*." (Doc. 86 at 8.) Plaintiff's preferred cases—*Gregory* and *Keko*—are also not the law in this circuit than *Buckley* and are therefore entitled to no more weight than Plaintiff suggests is due the decision in *Buckley*.

- 13 -

>direction and control of Yavapai County with respect to the underlying criminal case against Plaintiff; and (e) was hired to conduct a CBLA analysis of the evidence in the case.

(*Id.*; *see* Doc. 56 at 3-4 ¶ 8.) Thus, according to Plaintiff, his allegation "is not that Defendant Peele was a 'private expert,' but that he was an FBI agent engaged by a subdivision of the State of Arizona . . . to assist it with a criminal investigation." (*Id.* at 11-12.)

The Supreme Court has held that to constitute state action, "the conduct allegedly causing the deprivation of a federal right may be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Actions are "fairly attributable" to the government where "there is a sufficiently close nexus between the State and the challenged action of the regulated entity." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). The Supreme Court has set forth a two-part approach to the question of "fair attribution." *Lugar*, 457 U.S. at 937. "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.* Put another way, the required nexus between the State and the challenged conduct "exists either (1) where the state "has exercised coercive power [over a private decision] or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State"; or (2) where "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.'" *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

Plaintiff has not alleged that Yavapai County or the State "coerce[d]" Defendant Peele into fabricating evidence in his report or that they provided Peele "significant encouragement, either overt or covert." *Id*. In addition, Plaintiff has not alleged facts to support a conclusion that Peele operated as a "willful participant in joint activity with the

State or its agents." *Lugar*, 457 U.S. at 941. And Peele's preparation of an expert report in a criminal trial is not a power that is "traditionally the prerogative of the State." *Blum*, 457 U.S. at 1004.

Plaintiff argues that "one reasonable inference which Plaintiff must be afforded is that state or county law enforcement engagement of Defendant Peele was pursuant to an intergovernmental agreement in which the State or County worked jointly with the FBI's crime lab on criminal investigations." (*Id.* at 12.) Plaintiff is not entitled to this inference. Plaintiff alleges no facts to support an inference that Yavapai County retained Peele "pursuant to an intergovernmental agreement." Plaintiff does not identify such an agreement or allege any facts that suggest that Yavapai County and the FBI jointly agreed that the FBI's crime lab would "work[] jointly" on criminal investigations. Plaintiff's allegations are insufficient to support a conclusion that Peele acted under color of state law. *Cf. Price v. Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991) (requiring more than "'[c]onclusionary allegations, unsupported by facts'" to consider a private party a state actor for the purposes of § 1983) (quoting *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984)). The Court did not err in granting Peele's Motion to Dismiss.

For the foregoing reasons, the Court will deny Plaintiff's Motion for Reconsideration.

**IT IS ORDERED:**

(1) The Joint Motion to Amend/Correct (Doc. 84) the April 3, 2020 Order is **granted in part** as set forth herein. The Joint Motion to Amend/Correct is **denied** as to the request for certification of this case as appropriate for interlocutory appeal.

(2) Plaintiff's Motion for Reconsideration (Doc. 86) is **denied**.

Dated this 14th day of May, 2020.

Michael T. Liburdi
United States District Judge